UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOLKMANIS, INC., <br>     Plaintiff, <br> v. <br> UPTOWN TOYS LLC, <br>     Defendant. | Case No. 18-cv-00955-EMC <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** <br><br> Docket No. 18 |

Plaintiff Folkmanis, Inc. has filed a copyright infringement action against Defendant Uptown Toys, LLC. According to Folkmanis, Uptown has infringed by selling three puppets (an owl, zebra, and frog puppet) that are substantially similar to Folkmanis's copyrighted puppets. After Uptown failed to respond to Folkmanis's complaint, Folkmanis obtained an entry of default against it. *See* Docket No. 14 (notice). Now pending before the Court is Folkmanis's motion for default judgment. Uptown failed to file a written opposition to the default judgment motion. In addition, it failed to appear at the hearing on the motion.

Having considered the papers submitted, as well as the oral argument of counsel for Folkmanis, the Court hereby **GRANTS** the motion for default judgment.

## I.     FACTUAL & PROCEDURAL BACKGROUND

Folkmanis has provided the following evidence in conjunction with its motion for default judgment.

Folkmanis obtained the copyrights at issue in August 1991 (owl sculpture), December 2009 (zebra sculpture), and December 2017 (frog sculpture). *See* Brucker Decl., Exs. 4-6 (copyright registrations). Folkmanis sells its copyrighted puppets and each puppet "has a sewn-in tag with a clearly visible statutory copyright notice." Kollias decl. ¶ 9.

United States District Court
Northern District of California

In December 2017, Folkmanis learned that Uptown was selling three puppets that potentially infringed Folkmanis's copyrights. *See* Kollias Decl. ¶ 8. Folkmanis purchased Uptown's puppets from Amazon and received them in December 2017. *See* Kollias Decl. ¶ 8.

Folkmanis inspected Uptown's puppets and concluded that "each was constructed from the same pattern pieces as the corresponding Folkmanis Puppets and used sewing and other techniques unique to Folkmanis." Kollias Decl. ¶ 9. As a part of supplemental briefing, Folkmanis has provided photographs showing the pattern pieces for its own puppets, with the infringing puppet construction pieces overlaid on top. *See* Supp. Kollias Decl. ¶¶ 8-10 & Exs. 15-20 (photographs). In the supplemental declaration, Ms. Kollias also claims that there are other similarities between Folkmanis's puppets and Uptown's puppets. *See generally* Supp. Kollias Decl. ¶¶ 15-18 (for the frog puppet, asserting that, *inter alia*, the following details are the same: the material for the belly skin, the seam on the roof of the mouth, the length of the legs; for the zebra puppet, asserting that, *inter alia*, the following details are the same: horizontal stripes on the forehead (which is different from real zebras who have vertical stripes there), vinyl-lined nostrils; and for the owl puppet, asserting that, *inter alia*, the following details are the same: vinyl talons and beak, Velcro strips on the wings).

On or about January 5, 2018, Folkmanis (through counsel of record) sent a letter to Uptown regarding the alleged infringement. *See* Brucker Decl. ¶ 6 & Ex. 8 (letter). Uptown did not respond. Folkmanis emailed a copy of its letter to Uptown. Uptown still did not respond. On February 14, 2018, Folkmanis filed the instant action. *See* Brucker Decl. ¶ 6. Subsequently, Uptown failed to respond to the complaint and, on April 3, 2018, its default was entered. *See* Docket No. 14 (notice).

On April 12, 2018, Uptown reached out to Folkmanis and the parties engaged in settlement talks but they were not successful. *See* Brucker Decl. ¶¶ 8-9. Folkmanis thus proceeded with its motion for default judgment.

In its motion, Folkmanis seeks the following relief: (1) statutory damages in the amount of $150,000; (2) an injunction, (3) attorney's fees in the amount of $30,000; and (4) costs of $400 (representing the filing fee).

2

## II. DISCUSSION

### A. Service of Process

"In deciding whether to grant or deny default judgment, the Court must first 'assess the adequacy of the service of process on the party against whom default is requested' because, if service were improper, that may well explain the failure of a defendant to appear in a lawsuit." *D.light design, Inc. v. Boxin Solar Co., Ltd.*, No. 13-cv-05988-EMC, 2015 U.S. Dist. LEXIS 161062, at *7-8 (N.D. Cal. Dec. 1, 2015).

In the instant case, it appears that Uptown is a limited liability company. Under Federal Rule of Civil Procedure 4(h), a corporation, partnership, or other unincorporated association may be served "in the manner prescribed by Rule 4(e)(1) for serving an individual" – *i.e.*, by "following state law for serving a summons." Fed. R. Civ. P. 4(e)(1), (h). The proof of service filed by Folkmanis indicates that it served Uptown's registered agent (Shasha Goldmine, LLC) via U.S. Postal Service certified mail, with return receipt requested. *See* Docket No. 12 (proof of service). Thus, it appears that Folkmanis served Uptown pursuant to California Code of Civil Procedure § 415.40 which provides that "[a] summons may be served on a person outside this state . . . by sending a copy of the summons and of the complaint to the person to be served by first-class mail, postage prepaid, requiring a return receipt." Cal. Code Civ. Proc. § 415.40; *see also Roylance v. ADT Sec. Servs.*, No. C 08-1101 JF (RS), 2008 U.S. Dist. LEXIS 53829, at *4 (N.D. Cal. June 16, 2008) ("conclud[ing] that an agent of a limited liability company properly may be served pursuant to § 415.40"; noting that "[t]he comment to § 415.40 states that the statute applies to [a] defendant enumerated in" § 416.90, that § 416.90 covers "'person[s] not otherwise specified in this article,'" and that "[a]gents of limited liability companies appear to fall within the catchall provision, § 416.90, even though not expressly listed").

Because it appears that service was properly effected pursuant to § 415.40, the Court turns consider the merits of the motion for default judgment.

### B. *Eitel* Factors

Regarding the merits of the motion,

the Court considers the following factors: (1) the possibility of

3

> prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir.1986). Because of the entry of default, the Court – in evaluating the above factors – takes as true all well-pled factual allegations in the complaint except those related to the amount of damages. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

*D.light*, 2015 U.S. Dist. LEXIS 161062, at *9. Federal Rule of Civil Procedure 55, however, gives the Court discretion to "conduct hearings . . . when, to enter . . . judgment, it needs to [*e.g.*] determine the amount of damages [or] establish the truth of any allegation by evidence [or] investigate any other matter." Fed. R. Civ. P. 55(b)(2).

Many of the above factors weigh in favor of a default judgment. For example, Folkmanis would be prejudiced in the absence of a default judgment because it would be left without a remedy. *See id.* at *10. Also, there is little possibility of a dispute in light of Uptown's default, and Uptown's failure to appear cannot be attributed to excusable neglect. *See id.* Finally, while the sum of money at stake in the action is significant – a circumstance that might typically weigh against a default judgment – here, Folkmanis is asking primarily for statutory damages, an area over which the Court has a fair amount of discretion and, thus, the Court may address any concern regarding monetary damages in deciding what is a proper remedy. In other words, there is no reason to find that the amount of damages should preclude a finding of liability.

The only *Eitel* factors that are deserving of more analysis are the second and third, *i.e.*, the merits of Folkmanis's substantive claims and the sufficiency of those claims.

> To prevail on a copyright infringement claim, a plaintiff must show that (1) he or she owns the copyright in the infringed work, and (2) the defendant copied protected elements of the copyrighted work. A copyright plaintiff may prove copying with circumstantial, rather than direct, evidence. "Absent direct evidence of copying, proof of infringement involves fact-based showings that the defendant had 'access' to the plaintiff's work and that the two works are 'substantially similar.'"

*Williams v. Gaye*, 895 F.3d 1106, 1119 (9th Cir. 2018).

1. Ownership of Copyrights

In the instant case, Folkmanis has provided evidence that it owns copyrights for the owl, zebra, and frog sculptures/puppets. *See* Brucker Decl., Exs. 4-6 (copyright registrations).

2. Copying

As for copying, Folkmanis does not have direct evidence of such but asserts that there is circumstantial evidence – *i.e.*, Uptown had access to Folkmanis's works, and Uptown's puppets and Folkmanis's puppets are substantially similar.

It is a reasonable inference that Uptown – or at least an agent of Uptown – had access to Folkmanis's works. Folkmanis has provided evidence that it has sold the owl puppet for 18 years, the zebra puppet for 11 years, and the frog puppet for 4 years and obtained significant revenues from those sales. *See* Kollias Decl. ¶ 5. Folkmanis has also provided evidence that it has sold its puppets through Amazon, *i.e.*, one of the largest online retailers. *See* Kollias Decl., Ex. 8 (letter). These facts support the inference that Folkmanis's puppets were easily available to the public at large, including Uptown or one of its agents. Finally, access may reasonably be inferred from the fact that the pattern pieces for the Uptown puppets largely match the pattern pieces for the Folkmanis puppets. *See Design Basics, LLC v. Lexington Homes, Inc.*, No. 14-CV-1102, 2016 U.S. Dist. LEXIS 140207, at *9 (E.D. Wis. Sep. 29, 2016) (noting that "[a]ccess may . . . be inferred where the similarity of the copyrighted and accused works is 'so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded'").

As for substantial similarity, the Ninth Circuit uses a two-part test: an extrinsic test and an intrinsic test. *See Williams*, 895 F.3d at 1119.

> The extrinsic test assesses the objective similarities of the two works, focusing only on the protectable elements of the plaintiff's expression. Before that comparison can be made, the court must "filter out" the unprotectable elements of the plaintiff's work – primarily ideas and concepts, material in the public domain, and scènes à faire (stock or standard features that are commonly associated with the treatment of a given subject). The protectable elements that remain are then compared to corresponding elements of the defendant's work to assess similarities in the objective details of the works.

5

> [¶] The intrinsic test requires a more holistic, subjective comparison of the works to determine whether they are substantially similar in "total concept and feel" [from the perspective of the ordinary, reasonable person].

*Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1118 (9th Cir. 2018). Notably, "[i]n order to prevail, [a plaintiff] must satisfy both the extrinsic and intrinsic similarity tests."[1] *YS Built LLC v. Huang*, No. 17-35044, 2018 U.S. App. LEXIS 17636, at *3 (9th Cir. June 27, 2018); *see also Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004) (stating that a "'jury may not find substantial similarity without evidence on both the extrinsic and intrinsic tests'").

Beginning with the extrinsic test, the Court takes into consideration that copyright protection does not extend to objective facts, and ideas or to "expressions that are standard, stock, or common to a particular subject matter or medium." *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003). Thus, in *Satava*, the Ninth Circuit held that the plaintiff could "not prevent others from copying aspects of his sculpture resulting from either jellyfish physiology or from their depiction in the glass-in-glass medium." *Id.* And in *Aliotti v. R. Dakin & Co.*, 831 F.2d 898 (9th Cir. 1987), the Ninth Circuit held that "[n]o copyright protection may be afforded to the idea of producing stuffed dinosaur toys or to elements of expression that naturally follow from the idea of such dolls"; accordingly, plaintiffs may "place no reliance upon any similarity in expression resulting from either the physiognomy of dinosaurs or from the nature of stuffed animals." *Id.* at 901.[2] Even so, "there is no singular manner of depicting [an owl, zebra, or frog] by the way of the plush-toy medium," *Coquico*, 562 F.3 at 69, and thus Folkmanis's puppets are not without any copyright protection. Particular ways in which Folkmanis designed the puppets are protectable, including the specific patterns used. That being the case, there is a strong case here for substantial

---

[1] The intrinsic test is usually reserved for the jury. *See Williams v. Gaye*, 885 F.3d 1150, 1163 (9th Cir. 2018) ("A district court applies only the extrinsic test on a motion for summary judgment, as the intrinsic test is reserved exclusively for the trier of fact."). Because the Court is presented with a default judgment motion, however, it is appropriate for the Court to consider for itself the intrinsic test.

[2] *See also Coquico, Inc. v. Rodriguez-Miranda*, 562 F.3d 62, 68 (1st Cir. 2009) (holding that the merger doctrine and the doctrine of scenes a faire "in tandem . . . foreclose copyright protection insofar as [the plaintiff's plush tree frog's] characteristics are ineluctably and inextricably intertwined with the idea of producing a realistic depiction of a coqui[;] [f]or example, [the plaintiff] cannot possess a monopoly on brown-colored depictions of coquies that have two eyes, two ear discs, four legs, and nine toes (four front and five rear)").

similarity under the extrinsic test based on one significant fact alone – *i.e.*, that the pattern pieces for Folkmanis's puppets and those for Uptown's puppets are practically identical.

The intrinsic test is satisfied as well. Comparing the Folkmanis and Uptown puppets side by side, the Court finds that the total concept and feel of the works are quite similar. There is similarity in size and shape as well as similarity in some unique details – *e.g.*, for the owl, the Velcro on the wings and the vinyl beak and talons; for the zebra, the felt under the eyes and the vinyl nostrils; and for the frog, the cartoonish look and the length of the legs. Although there are "some dissimilarities" – *e.g.*, in color and fabric – "such variations are, no doubt to some extent, factors of the products available to each company and perhaps of slight adaptations in the patterns. These differences are of minor importance in the overall artistic expression of the entire animal faces and tails under review, and, consequently, they do not preclude a finding of infringement under the ordinary observer test." *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 511 (7th Cir. 1994).

Because both the extrinsic and intrinsic tests have been satisfied, the Court grants the motion for default judgment on the copyright infringement claim.

C.  Relief Requested

Having granted Folkmanis's motion, the Court now turns to the relief requested – *i.e.*, an injunction, statutory damages, and attorney's fees and costs.

1.  Injunctive Relief

The Copyright Act provides that "[a]ny court having jurisdiction of a civil action arising under this title *may*, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a) (emphasis added). Notably,

> "an injunction [does not] automatically follow[] a determination that a copyright has been infringed." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006). Rather, "[a]n injunction should issue only where the intervention of a court of equity is essential in order effectually to protect property rights against injuries otherwise irremediable." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312, 102 S. Ct. 1798, 72 L. Ed. 2d 91 (1982) (internal quotation marks and citation omitted). If granted, an injunction must be narrowly tailored to

> remedy only the harms that the plaintiff specifically identifies, rather than to enjoin all possible breaches of the law. *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004); *see also Iconix, Inc. v. Tokuda*, 457 F. Supp. 2d 969, 998-1002 (N.D. Cal. 2006).

*Livingston v. Art.com, Inc.*, No. 13-cv-03748-JSC, 2015 U.S. Dist. LEXIS 92211, at *50-51 (N.D. Cal. Apr. 17, 2015). "'Generally, a showing of copyright infringement liability and the threat of *future* violations is sufficient to warrant a permanent injunction.'" *Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) (emphasis added).

In the instant case, the Court concludes that a permanent injunction is not necessary. In its supplemental brief, Folkmanis admits that, to the best of its knowledge, Uptown is not selling the puppets at issue. *See* Supp. Br. at 5; *cf. Triple Up, Ltd. v. Youku Tudou, Inc.*, No. 17-7033, 2018 U.S. App. LEXIS 19699, at *3 (D.C. Cir. July 17, 2018) (holding that "Triple Up cannot demonstrate jurisdiction over its request for injunctive relief" because it "admits that Youku removed all potentially infringing videos promptly once notified, and that Triple Up has no basis to believe that the videos will be re-posted"; "[b]ecause Triple Up has not plausibly alleged 'any real or immediate threat that [it] will be wronged again,' the 'equitable remedy' of an injunction is 'unavailable'"). The Court takes into account Folkmanis's suggestion that Uptown may sell the puppets sometime in the future without an injunction because, even after Folkmanis served the summons and complaint on Uptown on February 27, 2018, *see* Docket No. 12 (executed summons), Folkmanis still managed to buy the allegedly infringing puppets (one each) from Amazon on April 3, 2018. *See* Kollias Decl. ¶ 11. However, that is fairly limited evidence and, even though the summons and complaint were *served* on February 27, 2018, one could hardly expect Uptown to immediately pull back all product just because it had been sued. In other words, it would not have been unreasonable for Uptown to take some time to investigate the lawsuit before taking any concrete action.

    2. <u>Statutory Damages</u>

Under the Copyright Act, an infringer is liable for either "(1) the copyright owner's actual damages and any additional profits of the infringer" or "(2) statutory damages." 17 U.S.C. § 504(a). In the instant case, Folkmanis has opted for statutory damages.

The Copyright Act provides that a plaintiff may be awarded statutory damages "for all

8

infringements involved in the action, with respect to any one work, . . . in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). For willful infringement, "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." *Id.* § 504(c)(2). In the instant case, Folkmanis seeks a total of $150,000, which presumes a finding of willful infringement.

There is not, however, sufficient evidence of willful infringement to support a higher statutory damages award. It is true that the copied pattern pieces are evidence of willful infringement. But that willful infringement was not necessarily on the part of Uptown itself. For example, Uptown could well have bought the puppets from a third party or even hired a third party to design puppets, in which case it was the third party who willfully infringed. To the extent Folkmanis argues willful infringement because it served the summons and complaint on Uptown in late February but Uptown still had product on sale on Amazon in early April, that argument is not particularly persuasive for the reasons stated above – *i.e.*, the product may still have been available because Uptown was investigating Folkmanis's claims of copyright infringement. Moreover, as noted above, Folkmanis admits that, now, to the best of its knowledge, Uptown is not selling any of the puppets at issue. Finally, while Folkmanis argues that this is not Uptown's "first rodeo," citing another case where Uptown was sued, *see* Mot. at 12, that case (*ENESCO, LLC v. Uptown Toys LLC*, No. C-16-8750 NRB (S.D.N.Y.)) did not result in any finding or adjudication. It was filed in November 2016 and then voluntarily dismissed in January 2017. There is no other evidence to suggest that Uptown is some kind of serial infringer.

The potential statutory damages therefore are $750-$30,000 for each work in the instant case. *See* 17 U.S.C. § 504(c)(1). Each work in the instant case consists of the owl and zebra puppets only. Folkmanis expressly concedes in its papers that statutory damages cannot be awarded for the frog puppet.[3] *See* Mot. at 5 (arguing that "Folkmanis is entitled to statutory

---

[3] As explained by Judge Corley:

> [U]nder the Copyright Act, copyright registration is a prerequisite to recovering certain remedies for infringement. Specifically, 17 U.S.C. § 412(2) states that statutory damages and attorneys' fees are not available for "any infringement of copyright commenced after

9

1 damages for infringement of its owl and zebra puppets, but not for its frog puppet (which

2 registration has an effective date [*i.e.*, December 19, 2017] after infringement commenced [*i.e.*, in

3 November 2016]").

As to an appropriate award for the owl and zebra puppets, the Court takes into account that "[m]ost . . . copyright . . . cases are about a defendant's commercial gain and the victim plaintiff's resulting commercial loss. Those economic factors tend to drive statutory damages awards . . . ." *Wilens v. Automattic Inc.*, No. 3:14-cv-02419-LB, 2015 U.S. Dist. LEXIS 88781, at *60-61 (N.D. Cal. Apr. 28, 2015). Here, Folkmanis does not have concrete evidence regarding Uptown's commercial gain because Uptown has never made an appearance in this case. Nevertheless, Folkmanis admits that, "[f]rom the little evidence that [it] has been able to gather concerning [Uptown's] business, [Uptown's] profits from these infringements are not likely large." Mot. at 10. As for Folkmanis's commercial loss, Folkmanis appears to still have made significant sales of its owl and zebra puppets, and it does not appear that Uptown's sales have impacted Folkmanis in any significant way. *See, e.g.*, Folkmanis Decl., Ex. 14 (chart showing sales of Folkmanis puppets for the two-year period prior to infringement and for the year-and-a-half period of infringement; while latter sales are smaller, that is likely due in part to the smaller time period).

Because the instant case is not one where the defendant's commercial gain and the

---

first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work." In the Ninth Circuit, "the first act of infringement in a series of ongoing infringements of the same kind marks the commencement of one continuing infringement under [Section] 412." *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 700 (9th Cir. 2008). Where such a continuing infringement begins before registration, statutory damages are denied. *See id.* While some courts faced with pre- and post-registration infringement award actual damages for the pre-registration infringement while reserving statutory damages for post-registration infringement, *see, e.g.*, *Getty Images (US) v. Virtual Clinics*, No. C13-0626JLR, 2014 U.S. Dist. LEXIS 12449, 2014 WL 358412, at * 7 (W.D. Wash. Jan. 31, 2014), the main approach appears to be denying statutory damages altogether where a defendant's infringement begins prior to registration – at least where, as here the pre- and post-registration infringement is part of one continuing pattern of conduct.

*Livingston*, 2015 U.S. Dist. LEXIS 92211, at *25-26.

10

plaintiff's commercial loss provide much, if any, guidance on statutory damages, the Court finds it appropriate to base the statutory damages award on Folkmanis's development costs, which it estimates at approximately $10,000 per puppet. *See* Supp. Kollias Decl. ¶ 3 (testifying that "Folkmanis does not keep records of the costs for the development of each of its puppets and . . . [the] costs do vary from puppet to puppet, as some . . . are very simple and some very complex"; calculating "a typical development cost for [an in-between] puppet" at approximately $10,000 per puppet). As noted above, statutory damages are not available for the frog puppet. Therefore, the total statutory damages award – for both the owl and zebra puppets – is $20,000.

### 3. Attorney's Fees and Costs

Title 17 U.S.C. § 505 provides:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provide by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505.

In the instant case, the costs requested by Folkmanis – *i.e.*, $400, representing the filing fee are reasonable. Attorney's fees, however, are a different story. Folkmanis asks to be awarded $30,000 in fees, which it notes, is actually a discount because it has actually incurred approximately $45,000 in fees (representing 96.5 hours of work). *See* Brucker Decl., Ex. 12 (chart).

As an initial matter, the $45,000 incurred fees are excessive. This case was filed about six or seven months ago (in February 2018) and has not involved any real substantive litigation. This makes the number of hours spent – 96.5 – unreasonable. This is underscored by the fact that the time spent on specific tasks does not seem justified. Most notably, counsel represents that it spent 49 hours on the motion for default judgment. That is the amount of time one might expect for a summary judgment motion, not a motion for default judgment. Counsel also claims that it spent 20 hours on (in essence) investigating and then *another* 17 hours (in essence) on preparing the complaint. This seems unwarranted, especially given that most of the investigation was already done by Folkmanis's employees. Moreover, part of the 20 hours spent on investigating includes

11

work that should not be compensated – *i.e.*, applying for a copyright registration for the frog puppet. That is a benefit that Folkmanis would have pursued independent of any litigation.

The Court finds that, given the tasks identified by counsel, it would have been reasonable for Folkmanis's attorneys to bill for 50 hours of their time. Using a blended hourly rate of $466 (*i.e.*, $45,000/96.5), the total fees awarded are $23,300.

### III. CONCLUSION

For the foregoing reasons, the Court grants Folkmanis's motion for default judgment and awards the following relief: (1) statutory damages in the amount of $20,000; (2) costs in the amount of $400; and (3) attorney's fees in the amount of $23,300. The total is $43,700.

The Clerk of the Court is instructed to enter a final judgment in accordance with the above and close the file in this case.

This order disposes of Docket No. 18.

**IT IS SO ORDERED**.

Dated: September 13, 2018

_____
EDWARD M. CHEN
United States District Judge

12